UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH A. CARTER, ROBERT J. KUREK, JOHN MCFAWN, PAUL L. MILES, ADOLPH F. RIVAS, CURLEE THOMAS, and Q. C. WILLIAMS, Jr., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 7169 |
| PENSION PLAN OF A. FINKL & SONS CO. for ELIGIBLE OFFICE EMPLOYEES, A. FINKL & SONS, JOSEPH E. CURCI. STEVE DENTEN, and BRUCE LIIMATAINEN, | ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, employees of Defendant A. Finkl & Sons Co., are participants in that company's Pension Plan for Eligible Office Employees ("the plan"), a plan subject to the Employment Retirement Income Security Act (ERISA). 29 U.S.C. § 1001 *et seq.* In a Second Amended Complaint filed in July 2009, Plaintiffs charge the plan, members of the plan's pension committee, and A. Finkl & Sons Co. as the plan's administrator, with violations of ERISA. They seek recovery of benefits (Count I) and seek to enforce rights under the Plan (Count II). In Count III of their complaint, Plaintiffs allege that Defendant understated the value of Plaintiffs' pension benefits and seek a judicial determination of the proper value of those benefits. Defendant has filed a motion to dismiss portions of Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is denied.

## BACKGROUND

**I.    Factual Background**

As this matter comes before the court on a motion to dismiss, the court presumes that the

allegations of the Second Amended Complaint are true.  Plaintiffs are long-serving employees of A. Finkl & Sons Co. ("the company"), each having more than 30 years of Credited Service as participants in the company's pension plan.  (Compl. ¶ 8.)  Until February 2007, the plan provided that a defined monthly pension payment would be made to any participant with at least 30 years of Credited Service, beginning upon retirement.  (*Id.* at ¶ 7.)  In December 2006, the company sent all plan participants written notice of its intention to terminate the plan as of February 28, 2007, stating: "We will notify you in writing if the proposed termination date is changed to a later date."  (*Id.* at ¶ 10.)  The company also adopted an amendment to the plan, which announced that "the Plan shall terminate effective February 28, 2007" and set forth procedures for a final distribution of plan benefits, as required by the termination provision of ERISA.  (*Id.* at ¶ 11-13.)  The plan, as amended to facilitate the termination, allowed each participant to elect to receive his or her benefits "in the form of an immediate annuity or a deferred annuity . . . regardless of whether he remains employed by the Employer."  (*Id.* at ¶ 15.)  In April 2008, Defendants advised Plaintiffs that the plan termination had "been approved by the Pension Benefit Guaranty Corporation" and invited Plaintiffs to submit election forms.  (*Id.* ¶ 21.)  On May 19, 2008, Plaintiffs submitted the completed forms, stating their election to take their dispersed benefits as immediate annuities.  (*Id.* at ¶ 22)

Plaintiffs contend that the amendment "unconditionally abolished" the requirement of actual retirement as a precondition for receiving benefit payments.  (*Id.* at ¶ 27.) They assert, further, that their ability to continue earning regular wages while employed at the company while simultaneously collecting pension benefits enhanced the value of their economic rights under the plan.  (*Id.* at ¶ 16-18.) Thus, Plaintiffs contend, any subsequent attempt to reinstate the retirement requirement would "work[] or attempt[] to work a reduction" in Plaintiffs' accrued rights and benefits under the plan, in violation of the plan's own anti-cutback clause and ERISA's anti-cutback provision, 29 U.S.C. § 1054(g).  (Id. at ¶ 28-29.)

In May 2008, the company did change course and advised plan participants that it no longer

intended to terminate the plan. (*Id.* at ¶ 25.) The company again amended the plan, this time by deleting the amendment provisions, an amendment described by Defendants' counsel as a "'voluntary withdrawal of a termination.'" (*Id.* at ¶ 26.) With the plan no longer set to terminate, the company announced in June 2008 that Plaintiffs' claims for dispersal of benefits were "moot" and that it had no intention to pay Plaintiffs any immediate annuities. (*Id.* at ¶ 27.) All Plaintiffs continue to work for the company, and because they are not retired, Plaintiffs have not received any portion of their plan benefits. (*Id.* at ¶ 8-9.)

Plaintiffs filed suit against the company and the plan, arguing that the company unconditionally abolished the plan's retirement requirement when it amended the plan and informed participants of termination, and thereby granted Plaintiffs an immediate entitlement to benefits that could not subsequently be undone without violating ERISA.[1]

## II.     Defendants' Motion to Dismiss

At issue on this motion is Count III. As noted, in that Count, Plaintiff charge Defendants with understating the pension benefits to which Plaintiffs are entitled. In July 2007, in connection with the then-proposed termination of the pension plan, the company issued computations of the value of Plaintiffs' entitlements as of December 31, 2006. (*Id.* at ¶ 30.) Then on May 16, 2008, just before announcing its intention to terminate the plan, the company issued revised calculations. (*Id.* at ¶ 31.) Plaintiffs' claim forms included Plaintiffs' own computations of their benefits, "determined on a conceptually comparable basis [to those offered by the company]," but demonstrating that

---

[1] In short, Plaintiffs contend that Defendants' earlier announcement of plan termination requires the conclusion that they are entitled to recover the benefits under the retirement plan, despite the fact that the plan has not in fact terminated and they have not yet retired. As the court understands Defendants' argument in response, Defendants contend that the plan's retirement requirement was never unconditionally abolished. Instead, Defendants claim, the distribution of benefits without regard to employment status was a condition of the plan's termination and was therefore wholly contingent on whether the termination actually came to pass. Since that condition was never fulfilled, Defendants claim, Plaintiffs are not immediately entitled to any payment under the plan and, presumably, will not become entitled until such time as they actually retire.

Defendants' calculations understated the value of the benefits to which Plaintiffs are entitled. (*Id.* at ¶ 22, 32.) Specifically, Plaintiffs allege that Defendants understated their pension benefits under the plan by, *inter alia*:

> a) incorrectly classifying as "special bonuses" not part of covered compensation under the plan what, in fact, were "regular bonuses" which are part of covered compensation under the plan;
>
> b) in the case of Plaintiff Miles, incorrectly applying rules applicable to Qualified Domestic Relations Order; and
>
> c) in the case of Plaintiff McFawn, incorrectly excluding from covered compensation a recurring cost-of-living adjustment, a recurring housing allowance and/or vacation pay.

(*Id.* at ¶ 33.) Plaintiffs' claim forms were rejected by the plan's Pension Committee by letter dated December 22, 2008. (*Id.* at 34.) Plaintiffs sought review, but the Pension Committee denied their appeal by letter dated March 26, 2009. (*Id.* at ¶ 35-36.)

In their motion to dismiss, Defendants argue that Plaintiffs have not pleaded sufficient facts and law in Count III to satisfy FED. R. CIV. P. 8. They urge, further, that Plaintiffs have failed to exhaust and failed to allege exhaustion of the plan's administrative procedure on aspects of the claim. Lastly, Defendants contend that any part of the claim relating to Plaintiff Miles's Qualified Domestic Relations Order ("QDRO") cannot proceed because Plaintiffs have failed to join Miles's ex-wife as a necessary party. For the reasons stated below, the court denies Defendants' motion to dismiss.

## **DISCUSSION**

**I.  Legal Standard**

The federal rules teach that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). This pleading requirement reflects a liberal notice pleading regime, "which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court."

4

*Brooks v. Ross*, 587 F.3d 574, 580 (7th Cir. 2009)(internal quotation omitted). The factual allegations of a complaint must be sufficient "to raise a right of relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct 1937, 1940 (2009). Our Circuit has interpreted the Supreme Court's decisions in *Twombly* and *Iqbal* to stand for three propositions:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks*, 587 F.3d at 581. Determining whether a complaint satisfies the pleading requirement is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. The court considers Defendants' motion to dismiss with these governing principles in mind.

## II.     Notice and Plausibility

Count III of Plaintiffs' Second Amended Complaint seeks a declaration of Plaintiffs' rights under the pension plan, pursuant to 29 U.S.C. § 1132(1)(B). Defendants urge that the statements contained in Subparagraphs 33(b) and 33(c) are insufficient because they do not separately and independently satisfy the requirements of FED.R.CIV.P. 8(a). Defendants appear to construe Count III as presenting three distinct claims--one based on classifications of bonuses, one based on Miles's share under his QDRO, and one based on McFawn's covered compensation. As the court reads these allegations, however, Count III presents a single claim, that Defendants miscalculated and understated Plaintiffs' pension benefits. Paragraph 33 sets forth three supporting examples. This paragraph, as a whole, is plausible on its face and provides Defendants with fair notice of Plaintiffs' claim that the plan understated their benefits and Plaintiffs' contentions about the source of the

understatement.

Nor are Plaintiffs' allegations insufficiently specific. Defendants are correct that Plaintiffs' reference, in subparagraph 33(b) to "incorrectly applying [QDRO] rules" is on its own arguably vague; QDRO's are indeed "subject to a number of rules," any one of which might generate a claim. (Def. Reply at 2.) When read in context, however, Paragraph 33 asserts a claim against Defendants for undervaluing Miles's pension entitlement by, among other things, miscalculating his share of entitled benefits under a QDRO. Even post-*Twombly* and *Iqbal*, there is no requirement that a pleading set forth every relevant fact or recite the applicable law. Instead, the complaint need merely set forth plausible allegations. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Plaintiffs' allegations are not implausible. Subparagraph 33(b)'s identification of Miles's QDRO as one area in which Defendants miscalculated Plaintiffs' benefits satisfies FED.R.CIV.P. 8(a)'s minimal "short and plain statement" requirement and provides Defendants with adequate notice of the claim.

Likewise, Subparagraph 33(c)—which alleges that Defendants miscalculated Plaintiff McFawn's cost of living adjustment, recurring housing allowance, and vacation pay—provides specific examples to support the single overarching claim of Count III that Defendants' systematically understated Plaintiffs' benefits under the plan. Subparagraph 33(c) is neither so sketchy nor so implausible as to deprive Defendants' of notice of Plaintiff's claim. The claim that Defendants understated Plaintiffs' benefits, as set forth and supported by the specific examples in Paragraph 33 of the complaint, satisfies FED.R.CIV.P. 8.

## III. Exhaustion of Administrative Procedure

Defendants also move to dismiss the understatement claim supported by Subparagraphs 33(b) and 33(c) on the ground that Plaintiffs have failed to exhaust and to allege exhaustion of the plan's administrative claims procedure. The exhaustion requirement is well-accepted. Pursuant to ERISA, employers must establish procedures for reviewing employees' claims under employee benefit plans, 29 U.S.C. § 1133, and "[a]s a prerequisite to filing suit, an ERISA plaintiff must exhaust

6

his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. Of America*, 295 F.3d 677, 679 (7th Cir. 2002). This requirement is intended to foster judicial economy, weed out frivolous lawsuits, minimize the costs of dispute resolution, and enable the preparation of a more complete factual record for judicial review. *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 807-08 (7th Cir. 2000).; *In re Household Internal Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006). Because there is no explicit statutory requirement of exhaustion in ERISA, the decision of whether to require exhaustion at all is within the discretion of the reviewing trial court. *In re Household*, 441 F.3d at 502; *Powell v. A.T.&T. Communications, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991). Typically, however, courts excuse a plaintiff from failing to pursue administrative remedies only when such remedies are not available or when the plaintiff demonstrates that pursuing administrative remedies would be futile. *Gallegos,* 210 F.3d at 808**.**

The complaint alleges that the plan's Pension Committee unequivocally rejected Plaintiffs' claims and denied their appeal. Specifically, Plaintiffs allege that "the Pension Committee denied Plaintiff's Claims . . . Plaintiffs sought review, as provided for in the plan . . . [and] the Pension Committee denied [Plaintiffs] appeals in full." (Compl. ¶ 34-36). Defendants contend that, at least with respect to Subparagraphs 33(b) and 33(c), this allegation is misleading because Plaintiffs' administrative claims made no mention of Miles's QDRO allegations or McFawn's housing allowance or vacation pay claims. In support of this charge, Defendants attach the election forms Plaintiffs submitted to the company and several pieces of correspondence exchanged between the parties during Plaintiffs' administrative appeal.[2] The court acknowledges that, at least in the documents now

---

[2] Defendants contend that these documents are not "matters outside the pleadings" under FED.R.CIV.P. 12(d), and therefore may be considered by the court on a motion to dismiss. The court may consider documents beyond the four corners of the complaint on a Rule 12(b)(6) motion if the documents are concededly authentic, referenced in the complaint, and central to the plaintiff's claims. *See Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002). Here, however, where Plaintiffs contend Defendants have not produced the relevant claim forms, the court concludes the issue is fairly disputed and therefore opts to limit its consideration to the complaint itself pending a more complete factual record.

provided by Defendants, Plaintiffs do not specifically mention Miles's QDRO or McFawn's covered compensation.

For purposes of a Rule 12 motion, the court presumes that Plaintiffs' allegations of exhaustion are true. Notably, the complaint alleges that Plaintiffs' claims were denied "in full," which necessarily implies that Plaintiffs fully and fairly presented their understatement claims in administrative proceedings. The complaint also alleges that Plaintiffs' benefits calculations, which presumably included the amounts relating to QDRO and covered compensation, were submitted to Defendants as "claim forms" during administrative review. (Compl. at ¶ 22.) In their response to Defendants' motion, Plaintiffs deny Defendants' charge of deception and suggest that Defendants have selectively failed to cite or produce the claim forms. (Pl's. Resp. at 4.)

At best, a fair resolution of this dispute requires further development of the facts. Moreover, exhaustion of administrative remedies under ERISA is treated as an affirmative defense, rather than a pleading requirement. *Gallegos,* 210 F.3d at 808-09; *Lauth v. Prudential Ins. Co.*, of America, No. 04 C 3198, 2006 WL 1302355 *3 (N.D. Ill. May 05, 2006). As such, it is not a basis for dismissal at this stage, when the court considers only the facial validity of the complaint. Defendants' motion to dismiss is therefore premature and will be denied.

## IV.     Failure to Join Esther Miles as a Necessary Party

Plaintiff Miles's interest under the plan is subject to an existing Qualified Domestic Relations Order. A QDRO is a court order that requires payment to or for the benefit of a plan participant's family. *See Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998). A state court's domestic relations order overrides the terms of a plan if it meets the criteria laid down by ERISA. 29 U.S.C. § 1056(d)(3). When a QDRO is issued, all parties, including a plan, must comply with its terms. *Blue*, 160 F.3d at 385.

The QDRO implicated in this case entitles Esther Miles, Plaintiff's ex-wife, to a benefit under the plan "which has the Actuarial Equivalent value, as of August 28, 2006, equal to the Actuarial

value of 50% of [Plaintiff Miles's] Accrued Benefit as of such date." (QDRO. Ex. 2 to Def.'s Mot. at 2.) Any change in Plaintiff Miles's benefit after August 28, 2006, has no impact on Esther Miles's entitlement. (*Id.*)

As already stated, a portion of Plaintiffs' understatement claim is supported by the contention that the plan and company miscalculated Plaintiff Miles's share of his benefits under the QDRO. Defendants move to dismiss this aspect of Plaintiffs' claim under FED.R.CIV.P. 12(b)(7) for failure to join Esther Miles as a necessary party to the action. Rule 19 defines a necessary party, in part, as a person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in a person's absence may . . . impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." FED.R.CIV.P. 19(a)

In this case, the act that gave rise to Plaintiffs' claim was the plan's issuance of a revised benefit calculation to Miles and the other Plaintiffs in May 2008. As the court reads the complaint, Plaintiffs take issue with the reduction in the May 2008 calculation as compared with an earlier July 2007 calculation. If the miscalculation of Plaintiff Miles' entitlement involved exclusively benefits accrued and tabulated after July 2007, as the complaint appears to suggest, Esther Miles has no claim upon the benefits under the QDRO. Her accrual of a percentage of Miles's plan benefits under the QDRO ended on August 28, 2006, and the court is not aware of any claim she has made upon benefits accrued after that date. Assuming Plaintiffs' claims involve only disputed benefits accrued and tabulated after August 28, 2006, Esther Miles has no interest at stake to protect and Defendants are not subjected to any risk of inconsistent obligations. In that instance, Esther Miles is not a necessary party, and Defendants' motion to dismiss Plaintiff Miles's claim is denied. That said, the court cautions that if Plaintiff claims that Defendants' conduct in understating benefits implicated benefits accrued by Miles before August 28, 2006, Plaintiff Miles will be directed to join Esther Miles as a party to this action.

## **CONCLUSION**

Defendants' motion to dismiss [29] is denied without prejudice.

ENTER:

Dated: December 17, 2009

_____
REBECCA R. PALLMEYER
United States District Judge