**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENNETH A. CARTER, ROBERT J. KUREK, JOHN McFAWN, PAUL L. MILES, ADOLPH F. RIVAS, CURLEE THOMAS and Q.C. WILLIAMS, JR., <br><br>Plaintiffs, <br><br>v. <br><br>PENSION PLAN OF A. FINKL & SONS CO. FOR ELIGIBLE OFFICE EMPLOYEES, A. FINKL & SONS CO., a Delaware Corporation, JOSEPH E. CURCI, STEVE DENTEN, and BRUCE LIIMATAINEN, <br><br>Defendants. | No. 08 C 7169 <br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

The "basic goal" of the Employment Retirement Income Security Act ("ERISA") is to protect employees' "justified expectations" of receiving benefits. *Young v. Verizon's Bell Atlantic Cash Balance Plan*, ___ F.3d ___, 2010 WL 3122795 at *8 (7th Cir. Aug. 10, 2010) (quoting *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 743 (2004)). "It would thwart this goal to enforce erroneous plan terms contrary to those expectations, even if doing so would increase employees' benefits." *Id.* This case involves a group of employees who are not retired, and who continue to participate in an operational plan under ERISA, but who nevertheless claim to be entitled to an immediate distribution of their retirement benefits. In ruling on a motion for summary judgment, this court has concluded that such a result is not the type of "justified expectation" that ERISA is designed to protect. *See Carter v. Pension Plan of A. Finkl & Sons Co. For Eligible Office Employees*, No. 08 C 7169, 2010 WL 1930133, at *8 (N.D.Ill. May 12, 2010). Plaintiffs seek reconsideration of this conclusion pursuant to FED.R.CIV.P. 59(e) but, for the reasons stated below, the motion is denied.

**BACKGROUND**

The facts of this case are presented in detail in the court's earlier order. *Carter*, 2010 WL 1930133, at *1-5. To summarize: at the time they commenced this lawsuit, Plaintiffs were all active employees of Defendant A. Finkl & Sons Co. ("Finkl"), and participants in that company's employee retirement plan (the "Plan"). In late 2006, Finkl elected to terminate the Plan and, pursuant to the statutory requirements, notified its employees of its intent to proceed with an immediate distribution of Plan assets. Before the termination process was complete, however, Finkl changed course–that is, Finkl decided not to terminate the Plan and withdrew from the termination process. The precise reasons for the decision are not clear, but in its earlier order, "[t]he court surmise[d] that Finkl simply failed to anticipate the nature of Plaintiffs' claims and, thus, did not accurately predict the Plan's potential liability upon termination." *Id.* at *4. In May 2008, Finkl notified its employees that the Plan would not be terminating, and obtained approval from the Pension Benefit Guaranty Corporation ("PBGC") to abort the termination process. The Internal Revenue Service ("IRS") also subsequently blessed the withdrawal, and both agencies now report that they consider the Finkl Plan to be an "on-going" retirement plan. *Id.* at *5. The parties also agree that the Plan "resumed its normal operation, paying benefits to participants as they came due." *Id.*[1] There is no dispute that the Plan never distributed any portion of its assets pursuant to the announced termination. *Id.*

Plaintiffs contend these circumstances constitute a violation of the "anti-cutback" provisions of ERISA. They urge that despite the Plan's continued operation, Plaintiffs are entitled to receive an immediate distribution of their retirement benefits as though the Plan had terminated. They contest the validity of the PBGC and IRS determinations that the Plan remains an active plan under

---

[1] The record shows that Finkl froze the accrual of employee benefits under the Plan before beginning the termination process. Plaintiffs point to this freeze as evidence that Finkl's employees did not benefit from the resumption of the Plan's active operations, but Plaintiffs acknowledge that the Plan has continued to pay all accrued benefits as promised following its withdrawal from the termination process.

2

ERISA, and they seek to compel the forced distribution of the Plan's assets.

In its May 12, 2010 opinion granting summary judgment in favor of Defendants, this court concluded that, because the Plan did not actually terminate as planned, Plaintiffs were not entitled to any immediate distribution of benefits. *Id.* at *9. ("[N]ot all of the necessary requirements for ERISA's statutory termination process were satisfied in this case, and the termination process was not fully consummated. . . . In the absence of a complete satisfaction of the statutory termination process, this court will not indulge Plaintiffs' request for an 'extratextual remedy' by forcing the Plan's termination or ordering an untimely distribution of the Plan's assets.") The PBGC's approval of the Plan's continued operation, the court explained, was particularly relevant to its decision because Congress has charged that agency with the responsibility of representing the interests of plan participants. *Id.* at *9-10. Likewise, the court considered the determination of the IRS because the Secretary of the Treasury is empowered by ERISA to interpret and apply the anti-cutback rules of the statute and the revenue code.

The court expressed its concern that a judgment for Plaintiffs could jeopardize the continuation of the Finkl Plan or require a distribution of benefits that would result in forfeiture of the Plan's protected tax status. "Such a distribution," the court explained, "could risk placing the Plan's other participants (who are not parties to this action) in peril of having their benefits under the Plan altered or underfunded–a result at odds with the purposes of ERISA." *Id.* at *10. As explained briefly below, the court is not inclined to revisit its earlier order.

## DISCUSSION

Plaintiffs in this case are not retired; they have not reached the Plan's designated retirement age; and they continue to enjoy active employment with Finkl for full compensation. This court concluded that Plaintiffs were not yet entitled to receive their retirement benefits, because "the statute implies a required condition of actual retirement or the attainment of a designated retirement age." *Id.* at *12. In their motion for reconsideration, Plaintiffs insist that they are indeed entitled to

seek an "in-service distribution" of their retirement benefits and contend that such a distribution is contemplated by ERISA.

Under certain limited circumstances, the regulations authorize an employer to make "in-service distributions" of their benefits to qualified employees. Such a distribution is "an optional form of benefit that is protected" under ERISA's anti-cutback provisions. IRS NOT. 2007-8. The circumstances recognized under the statute constitute narrow exceptions to the prevailing rule that "a qualified pension plan is generally not permitted to pay benefits before retirement." *Id.* For example, an employer may elect to distribute benefits to a participant in "a *bona fide* phased retirement program" who reaches 62 years of age, even if the participant remains partially employed. *Id.* Plaintiffs rely on this exception for the proposition that ERISA does indeed permit the payment of benefits to plan participants who are not retired. The cited exception, however, is obviously inapplicable in this case, where Plaintiffs do not purport to assert a claim for benefits based on their ages. Instead, Plaintiffs admit that their claimed entitlement is based upon the number of years they have each spent in Finkl's employ. Plaintiffs have not, however, identified any regulatory or statutory provision that recognizes an exception for employees who have reached a designated length of service, and the court is aware of no such provision. The court sees no basis for the conclusion that ERISA's anti-cutback provisions protect Plaintiffs' claim for an in-service distribution, or that ERISA contemplates the distribution they seek in this lawsuit.

Rather than identifying authority for their contention, Plaintiffs attempt to rely on a quasi-estoppel theory along these lines: Finkl advised Plaintiffs that it intended to terminate the Plan and that Plaintiffs would receive a distribution of benefits pursuant to the termination; Finkl's statements create an entitlement to the distribution.[2] Even if Plaintiffs could establish a hypothetical entitlement

---

[2] In the context of addressing Plaintiffs' theory, the court noted that Plaintiffs had "neither alleged nor presented evidence that they undertook acts in detrimental reliance" on the planned termination. *See Carter*, 2010 WL 1930133, at *12. The court further observed: "Plaintiffs
(continued...)

4

in the event of the Plan's termination, however, such an entitlement never became effective in this case. As the court explained in its earlier order, the Finkl Plan never terminated, either by its own terms or under the statutory process set out by ERISA. *See Carter*, 2010 WL 1930133, at *8 ("Thus, it is reasonable to conclude that the Plan's actual termination was a necessary condition to the distribution of benefits contemplated by Amendment 1. And, because that necessary condition was never fulfilled, Plaintiffs do not have a viable claim to compel distribution of their benefits before their actual retirements.") The court remains convinced that, because the necessary condition for their claimed entitlement was never fulfilled, Plaintiffs have no valid claim for an immediate distribution of benefits. Plaintiffs disagree with this determination as a matter of law, but they have mustered no authority that supports a contrary conclusion.

The case Plaintiffs now attempt to rely upon, *In re Syntex Fabrics, Inc. Pension Plan*, 698 F.2d 199, 203 (3d Cir.1983), was not mentioned by either party in their briefs on summary judgment, but the court found it instructive. As explained earlier, *Syntex* involved an employer that withdrew from a voluntary termination process without first seeking the approval of the PBGC. *Id.* at 204. Because the PBGC had previously accepted the employer's proposed termination date and had not approved the employer's withdrawal, the Third Circuit concluded, the employer was not free to unilaterally "change its mind" regarding plan termination. *Id.* The court's decision appeared to rest largely on the employer's failure to obtain the PBGC's consent for withdrawal, because "[ERISA] assume[s] that PBGC will act as guardian in the first instance of the interests of the fund

---

[2](...continued)
appear [not] to have suffered any harm as a result of the Plan's continued operation; by Plaintiffs' own account, the Plan is able and willing to pay their promised benefits in full. Plaintiffs merely have to wait until such time as they actually retire to begin collecting those benefits." *Id.* Plaintiffs now contend that, by making these statements, the court improperly imported the element of reliance into Plaintiff's *prima facie* case. In fact, the court's decision rests on the conclusion that Plaintiffs have no valid entitlement to any protected benefit. The accompanying factual observations are merely intended to demonstrate why the outcome of this case comports with equity; namely, Plaintiffs have not suffered a harm that warrants relief.

and the plan's participants." *Id.* In the case before this court, in contrast to *Syntex*, the PBGC *was* apprised of Finkl's intent to abort the termination process and explicitly endorsed Finkl's withdrawal from termination.

Significantly, the PBGC determined that the Finkl plan did not terminate at all, but remained an on-going ERISA plan. Courts have long viewed such determinations with deference, and this court applied that principle in this case. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 104 (2007) ("We have traditionally deferred to the PBGC when interpreting ERISA, for to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA, would be to embark upon a voyage without a compass.") (internal quotation marks omitted); *see also Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.,* 872 F.2d 208, 210, n. 2 (7th Cir.1989) ("The PBGC's views are entitled to deference because of its responsibility to enforce Title IV of ERISA."); *Penn Central Corp. v. Western Conference of Teamsters Pension Trust Fund*, 75 F.3d 529, 534 (9th Cir.1996) ("We are obligated to defer to the PBGC's interpretation '[e]ven if reasonable minds could differ as to the proper interpretation of the statute.'"). This court is guided by the principle of deference to the PBGC as well. Though Plaintiffs contend that the PBGC's conclusions are somehow tainted or unreliable, Plaintiffs did not pursue the administrative appeal mechanism authorized by applicable regulations before filing this suit. *See* 29 C.F.R. § 4003.1 *et seq.* (establishing an administrative appeals procedure for all initial agency determinations "with respect to voluntary terminations.") Plaintiffs did not contest the agency's decision and the record before this court does not support their assertions that the PBGC either erred or was misled in reaching its conclusions.

The court's decision also took note of the IRS's position with respect to the Finkl Plan: the IRS has determined that the plan remains a valid, ongoing, tax-protected pension plan. Plaintiffs have since appealed that determination in the U.S. Tax Court, but as the court writes, it remains the authoritative position of the agency. To be clear, this court did not *base* its decision exclusively

upon the IRS determination or upon its understanding of the Plan's qualified tax status. Rather, the court *considered* those positions in light of its own determination that the Finkl Plan has not met the statutory requirements for termination and remains an active plan. The determinations of the IRS and PBGC are consistent with the court's own independent conclusion that the Plan did not terminate.

Finally, the court considers Plaintiffs' challenge to the court's decision to grant summary judgment on Counts II and III of the complaint. Plaintiffs' brief arguments do not satisfy the court that reconsideration of its earlier decision is appropriate. With respect to Count II, the court determined that there was insufficient evidence of bad faith on Defendants' part to justify Plaintiffs' claim for attorneys' fees. Plaintiffs offer no evidence to the contrary. On Count III, the court found that Plaintiffs had failed to raise a material dispute of fact regarding Finkl's calculation of bonuses under the Plan's benefit formula. Plaintiffs' argument was based exclusively on speculation as to the meaning of terms in Finkl's undisputedly authentic business records. In contrast, Defendants produced the sworn statement of its senior human resources officer, explaining that the actual meaning of the terms was not what Plaintiffs had supposed. Plaintiffs' request for reconsideration of these claims is denied.

## **CONCLUSION**

Plaintiffs have not persuaded the court that it committed legal or factual error in granting Defendants' motion for summary judgment. Plaintiffs' motion to alter judgment [88] is denied.

ENTER:

Dated: September 1, 2010

_____
REBECCA R. PALLMEYER
United States District Judge